96 So.2d 130 (1957)
Ervine HARGROVE, Appellant,
v.
TOWN OF COCOA BEACH, Florida, a municipal corporation Appellee.
Supreme Court of Florida, En Banc.
June 28, 1957.
*131 Maurice Wagner and Richard D. Bertone, Daytona Beach, for appellant.
Daniel N. Meadows and Butt & Akridge, Cocoa, for appellee.
Ralph A. Marsicano, Tampa, for Florida League of Municipalities.
THORNAL, Justice.
Appellant Ervine Hargrove, who was plaintiff below, seeks reversal of an order of the trial judge sustaining a motion to dismiss her complaint against the appellee Town in an action seeking damages for the alleged wrongful death of appellant's husband.
To dispose of the case we must determine whether a municipal corporation should continue to enjoy immunity from liability for the wrongful acts of police officers.
Appellant, as plaintiff, alleged that her husband was incarcerated in the town jail while in a helpless condition because of excessive intoxication. She alleged that the jailor locked all the doors and departed, leaving no guard or other attendant on duty; that during the night the cell became filled with smoke resulting in the fatal suffocation of appellant's husband. For the alleged negligence in leaving the jail unattended and the prisoner unprotected against the fire, thereby producing the death of her husband, Mrs. Hargrove sought damages from the City. The trial judge sustained a motion to dismiss the complaint on the theory that the municipality was immune to liability for this type of tort. Reversal of his order is now sought.
The appellant recognizes our prior decisions on the subject and frankly requests us to recede therefrom.
The appellee, of course, cites our own precedents to support the ruling of the trial judge.
We are here faced squarely with an appeal to recede from our previously announced rule which immunizes a municipal corporation against liability for torts committed by police officers. The rule against municipal liability for torts has been the subject of thousands of pages of learned dissertations. We are told that since 1900 well over two hundred law review articles alone have been written on the subject.[1] Innumerable textbooks have made their contribution, most of them adversely critical. *132 The books are full of decisions of courts covering various aspects of the problem. Our own precedents reveal that this Court has many times had the matter under consideration. Because of these comprehensive discussions of the subject, there is very little that we can now add.
Our own present study of the matter leads us to a consideration of the problem as one arising out of an historical recognition of a division of municipal functions into two categories, to wit, governmental and proprietary. It has been held that in the exercise of so-called governmental functions, the municipality is immune to liability. In the exercise of proprietary functions, the municipality has been held responsible for the torts of its agents.
Immunization in the exercise of governmental functions has been traditionally put on the theory that "the king can do no wrong but his ministers may". In applying this theory the courts have transposed into our democratic system the concept that the sovereign is divine and that divinity is beyond reproach. In preserving the theory they seem to have overlooked completely the wrongs that produced our Declaration of Independence and in the ultimate resulted in the Revolutionary War. We, therefore, feel that the time has arrived to declare this doctrine anachoristic not only to our system of justice but to our traditional concepts of democratic government.
The immunity theory has been further supported with the idea that it is better for an individual to suffer a grievous wrong than to impose liability on the people vicariously through their government. If there is anything more than a sham to our constitutional guarantee that the courts shall always be open to redress wrongs and to our sense of justice that there shall be a remedy for every wrong committed, then certainly this basis for the rule cannot be supported.
Tracing the rule to its ultimate progenitor we are led to the English case of Russel v. Men of Devon, 2 T.R. 667, 100 Eng.Rep.R. 359 (1788). The Men of Devon decision merely relieved the inhabitants of an unincorporated county from liability for damages resulting from a defective bridge. Aside from the fact that the case involved a county rather than a city, it is interesting to note that we ourselves have refused to follow this historic precedent so far as cities are concerned in the numerous cases in which we have held municipalities liable for negligence in the maintenance of streets and bridges. As early as 1850 in City of Tallahassee v. Fortune, 3 Fla. 19, the Men of Devon decision was very clearly explained and distinguished. Our Court then pointed out that the leading English precedent turned on the proposition that it was an action against all of the people of an unincorporated community having no corporate fund or legal means of obtaining one. The law would not impose the burden on each individual citizen.
The appellee here contends that any recession from the rule of immunity should come about by legislation rather than judicial decree. It is insisted that the immunity rule is a part of the common law which we have adopted and that therefore its abolition should come about only by statute. We are here compelled to disagree.
Assuming that the immunity rule had its inception in the Men of Devon case, and most legal historians agree that it did, it should be noted that this case was decided in 1788, some twelve years after our Declaration of Independence. Be that as it may, our own feeling is that the courts should be alive to the demands of justice. We can see no necessity for insisting on legislative action in a matter which the courts themselves originated.
The problem in Florida has become more confusing because of an effort to prune and pare the rule of immunity rather than to uproot it bodily and lay it aside as we should any other archaic and outmoded concept. This pruning approach has produced numerous strange and incongruous results. While holding that a municipality can be held liable *133 for the negligent operation of a fire truck,[2] we have exempted a municipality from liability when a jailor assaulted a prisoner with a blackjack and produced a skull concussion which resulted in his death.[3]
Despite the exemption extended in the case last mentioned, we nevertheless in Lewis v. City of Miami, 127 Fla. 426, 173 So. 150, had held the municipality liable to a prisoner who had contracted a communicable disease while in the city jail. Under the rule we have followed, if a police officer assaults and injures a prisoner, the municipality is immune[4] but if the police officer is working the prisoner on the public streets and negligently permits his injury, the municipality can be held liable.[5] If the police officer is driving an automobile and negligently injures a citizen, the municipality is liable[6] but if the same police officer gets out of the same automobile and wrongfully assaults a citizen, the municipality is immune from responsibility.[7]
We have mentioned these incongruities in the application of the immunization doctrine in Florida merely to justify the position, which we here take, that the time has arrived to face this matter squarely in the interest of justice and place the responsibility for wrongs where it should be. In doing this we are thoroughly cognizant that some may contend that we are failing to remain blindly loyal to the doctrine of stare decisis. However, we must recognize that the law is not static. The great body of our laws is the product of progressive thinking which attunes traditional concepts to the needs and demands of changing times. The modern city is in substantial measure a large business institution. While it enjoys many of the basic powers of government, it nonetheless is an incorporated organization which exercises those powers primarily for the benefit of the people within the municipal limits who enjoy the services rendered pursuant to the powers. To continue to endow this type of organization with sovereign divinity appears to us to predicate the law of the Twentieth Century upon an Eighteenth Century anachronism. Judicial consistency loses its virtue when it is degraded by the vice of injustice.
We therefore now recede from our prior decisions which hold that a municipal corporation is immune from liability for the torts of police officers. Affirmatively we hold that a municipal corporation may be held liable for the torts of police officers under the doctrine of respondeat superior. We think it advisable to protect our conclusion against any interpretation that would impose liability on the municipality in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial, functions as illustrated in such cases as Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049; and Akin v. City of Miami, Fla. 1953, 65 So.2d 54.
Subject to the limitations above announced, we here merely hold that when an individual suffers a direct, personal injury proximately caused[8] by the negligence of a municipal employee while acting within the scope of his employment, the injured individual is entitled to redress for the wrong *134 done. To support the rule we hearken back to our original Florida precedent, City of Tallahassee v. Fortune, supra. Our judicial forebears there held that where an individual suffers a special personal damage not common to the community but proximately resulting from the negligence of the municipal corporation acting through its employees, such individual is entitled to redress. We think this general rule was sound when it was announced in 1850 and it should be reestablished as the law of Florida. Within the framework of the above announced limitations this is the rule of our present opinion. In this vein, we therefore point out that instead of disregarding the rule of stare decisis, we now merely restore the original concepts of our jurisprudence to a position of priority in order to eradicate the deviations that have in our view detracted from the justice of the initial rule.
The further point is here made to the effect that our death by wrongful act statute (Section 768.01, Florida Statutes, F.S.A.) in imposing liability on corporations for wrongful death is not applicable to municipal corporations. We did hold in City of St. Petersburg v. Carter, Fla. 1949, 39 So.2d 804, that in view of the subject matter regulated by the statute there under consideration, a municipal corporation could not have been within the contemplation of the legislature when it gave the Railroad Commission authority over certain corporations.
On the other hand we have on several other occasions, directly or by necessary implication, considered municipal corporations as being within the contemplation of the legislature in enacting statutes with reference to "corporations". See Parker v. City of Jacksonville, Fla. 1955, 82 So.2d 131; City of Lakeland v. Amos, 106 Fla. 873, 143 So. 744. In City of Sebring v. Avant, 95 Fla. 960, 117 So. 383, we held the municipality within the contemplation of the word "person" in a statute regulating persons engaged in hazardous occupations.
We hold that a municipal corporation was within the contemplation of the legislature when it adopted Section 768.01, Florida Statutes, F.S.A.
Much that we have here written has been heretofore adequately and thoroughly presented by the able dissenting opinions of Mr. Chief Justice Terrell and Mr. Justice Hobson in City of Miami v. Bethel, Fla. 1953, 65 So.2d 34, and the dissents of the same Justices in Williams v. City of Green Cove Springs, Fla. 1953, 65 So.2d 56. Mr. Justice Roberts concurred in these dissents. Reference might properly be had to those opinions for a more thorough and lucid explanation of our justification for departure from the rule of municipal immunity.
The conclusion here announced has not been hastily formulated. The matter was thoroughly briefed and argued by counsel for the parties. At the invitation of the Court, The Florida League of Municipalities filed briefs and through counsel ably presented the matter amicus curiae. It is fitting that we herewith express our appreciation.
We add in absolute fairness to the trial judge who heard this case below that, in ruling as he did, he properly relied on our precedents. We here merely recede from the prior cases in order to establish a rule which we are convinced will be productive of results more nearly consonant with the demands of justice.
The judgment appealed from is therefore reversed and the cause remanded for further proceedings consistent herewith.
TERRELL, C.J., and HOBSON, ROBERTS, DREW and O'CONNELL, JJ., concur.
THOMAS, J., dissents.
NOTES
[1] Illustrative are Price and Smith, Municipal Tort Liability: A Continuing Enigma, 6 U.Fla.L.Rev. 330 (1953) and articles therein mentioned, esp. note 1; also 6 Ala.L.Rev. 119 (case note based on City of Miami v. Bethel, Fla. 1953, 65 So.2d 34); Quel, Municipal Immunity from Tort Liability, 6 Record (Ass'n of the Bar of the City of New York) 190; 31 Boston U.L.Rev. 386; 8 Vanderbilt L. Rev. 753; 16 La.L.Rev. 812; 29 N.Y.U.L.Rev. 1321; and see annotation, 120 A.L.R. 1376.
[2] Kaufman v. City of Tallahassee, 1922, 84 Fla. 634, 94 So. 697, 30 A.L.R. 471; Maxwell v. City of Miami, 1924, 87 Fla. 107, 100 So. 147, 33 A.L.R. 682; City of Tallahassee v. Kaufman, 1924, 87 Fla. 119, 100 So. 150.
[3] Brownlee v. City of Orlando, 1946, 157 Fla. 524, 26 So.2d 504.
[4] Kennedy v. City of Daytona Beach, 1938, 132 Fla. 675, 182 So. 228.
[5] Ballard v. City of Tampa, 1936, 124 Fla. 457, 168 So. 654.
[6] City of Avon Park v. Giddens, 1946, 158 Fla. 130, 27 So.2d 825, and cases cited.
[7] City of Miami v. Bethel, Fla. 1953, 63 So.2d 34.
[8] City of Miami v. Fuller, Fla. 1951, 54 So.2d 198; Janes v. City of Tampa, 1907, 52 Fla. 292, 42 So. 729.