316 So.2d 565 (1975)
Miriam Dee NOBLES, Appellant,
v.
CITY OF JACKSONVILLE, a Municipal Corporation, Appellee.
No. W-162.
District Court of Appeal of Florida, First District.
July 17, 1975.
Rehearing Denied August 29, 1975.
Earl B. Hooten, II, S. Perry Penland Law Offices, Jacksonville, for appellant.
Marion R. Shepard, Mathews, Osborne, Ehrlich, McNatt, Gobelman & Cobb, Jacksonville, for appellee.
BOYER, Chief Judge.
We here again visit the anachronistic doctrine of governmental immunity.
Appellant, plaintiff in the trial court, was injured while operating an automobile across the Main Street Bridge in the City of Jacksonville during inclement weather. He filed suit alleging that the City was negligent in its duty to assure the safety of those using the bridge and traversing the steel grating thereof and in not properly supervising, enforcing, controlling and directing traffic flow for the safety of those using the bridge pursuant to the requirements of one of its own ordinances. Summary judgment was entered for the City resulting in appeal to this Court.[1] This Court reversed, Judge Rawls dissenting. On remand the trial court granted the defendant's motion to amend its answer to include the defense of governmental immunity. Thereafter a directed verdict was entered in favor of the defendant and this appeal followed. The only issue meriting our consideration relates to the applicability of Hargrove v. Town of Cocoa Beach[2] and its offspring.
In Hargrove the Supreme Court of Florida recognized and criticized the irreconcilable conflict between the doctrine of governmental immunity and traditional concepts of American justice, saying:
"Immunization in the exercise of governmental functions has been traditionally put on the theory that `the king can do no wrong but his ministers may'. In applying this theory the courts have transposed into our democratic system *566 the concept that the sovereign is divine and that divinity is beyond reproach. In preserving the theory they seem to have overlooked completely the wrongs that produced our Declaration of Independence and in the ultimate resulted in the Revolutionary War. We, therefore, feel that the time has arrived to declare this doctrine anachoristic not only to our system of justice but to our traditional concepts of democratic government.
"The immunity theory has been further supported with the idea that it is better for an individual to suffer a grievous wrong than to impose liability on the people vicariously through their government. If there is anything more than a sham to our constitutional guarantee that the courts shall always be open to redress wrongs and to our sense of justice that there shall be a remedy for every wrong committed, then certainly this basis for the rule cannot be supported." (96 So.2d 132)
The court thereupon further stated:
"The problem in Florida has become more confusing because of an effort to prune and pare the rule of immunity rather than to uproot it bodily and lay it aside as we should any other archaic and outmoded concept. This pruning approach has produced numerous strange and incongruous results. * * *." (96 So.2d 132)
* * * * * *
"We have mentioned these incongruities in the application of the immunization doctrine in Florida merely to justify the position, which we here take, that the time has arrived to face this matter squarely in the interest of justice and place the responsibility for wrongs where it should be. In doing this we are thoroughly cognizant that some may contend that we are failing to remain blindly loyal to the doctrine of stare decisis. However, we must recognize that the law is not static. The great body of our laws is the product of progressive thinking which attunes traditional concepts to the needs and demands of changing times. The modern city is in substantial measure a large business institution. While it enjoys many of the basic powers of government, it nonetheless is an incorporated organization which exercises those powers primarily for the benefit of the people within the municipal limits who enjoy the services rendered pursuant to the powers. To continue to endow this type of organization with sovereign divinity appears to us to predicate the law of the Twentieth Century upon an Eighteenth Century anachronism. Judicial consistency loses its virtue when it is degraded by the vice of injustice." (96 So.2d 133; emphasis added)
Rendering its holding crystal clear (at least for the next ten years[3]) the Court said:
"* * * we here merely hold that when an individual suffers a direct, personal injury proximately caused by the negligence of a municipal employee while acting within the scope of his employment, the injured individual is entitled to redress for the wrong done. * * *" (96 So.2d 133-134)
The Bench and Bar alike, thinking the "pruning and paring" of the rule of immunity to have been laid to rest, applied the Hargrove doctrine[4] until that doctrine was itself pruned and pared by the Supreme Court in Modlin v. City of Miami Beach, supra.
We recognized the limiting effect of the Modlin decision on the Hargrove doctrine in Florida First National Bank v. City of Jacksonville.[5] However, the facts in that *567 case accommodated both decisions. Sub judice they do not. There are no facts here to indicate that appellee owed to appellant any duty differing from that owed to the public generally.[6] Instead, applicable here is the cliche which finds refuge in the Modlin decision to the effect that "since the city owes a duty to everybody it owes no duty to anyone".
Appellant now frankly urges this Court to adhere to the Hargrove doctrine without the limitation imposed by Modlin. Candidly, were we at liberty so to do we would be so disposed. Alas, however, District Courts of Appeal have been soundly admonished to avoid such temptations.[7]
Our view of the justice of the situation has not changed since we said, in our prior opinion:[8]
"As we view the law, one of the most important duties and responsibilities of a municipality is to protect its citizens from known dangers, such as traffic hazards, even though another government agency has the primary responsibility as to such conditions. We think that Ordinance 68-82-59 placed the duty upon the Sheriff's Office, the Traffic Engineer's Office, and other city officials to try to protect the citizenry against known traffic hazards, such as the steel grating on the bridge." (265 So.2d 552)
However, application of the Modlin limitation on the Hargrove doctrine appears to us to mandate affirmance of the action of the learned trial judge here reviewed who obviously construed and applied those cases in the same manner as we do here.
Affirmed.
MILLS, J., and MELVIN, WOODROW M., Associate Judge, concur.
NOTES
[1] Nobles v. City of Jacksonville, Fla.App.1st 1972, 265 So.2d 550.
[2] Sup.Ct.Fla. 1957, 96 So.2d 130.
[3] See Modlin v. City of Miami Beach, Sup.Ct.Fla. 1967, 201 So.2d 70.
[4] See City of Tampa v. Davis, Fla.App.2nd 1969, 226 So.2d 450.
[5] Fla.App.1st 1975, 310 So.2d 19.
[6] See Modlin v. City of Miami Beach, supra; Florida First National Bank v. City of Jacksonville, supra.
[7] See Hoffman v. Jones, Sup.Ct.Fla. 1973, 280 So.2d 431.
[8] Nobles v. City of Jacksonville, supra.