417 So.2d 807 (1982)
Ralph M. AUSTIN, Appellant,
v.
CITY OF MT. DORA, a Municipal Corporation, Appellee.
No. 81-1512.
District Court of Appeal of Florida, Fifth District.
August 4, 1982.
*808 Herbert H. Hall, Jr., and Kenneth R. Cate of Maher, Overchuck, Langa & Cate, Orlando, for appellant.
Robert A. Hannah of Pitts, Eubanks & Ross, P.A., Orlando, for appellee.
COBB, Judge.
The appellant, Ralph M. Austin, appeals from a final summary judgment in favor of the appellee, City of Mt. Dora. The case originated from a motorcycle accident occurring on April 28, 1978, at approximately 9:00 p.m. At that time Austin was operating a Kawasaki 650 in a westerly direction on an east-west roadway known as Crane Avenue near, but not in, the City of Mt. Dora. As Austin started down a slight hill, he failed to see a stop sign at the "T" intersection of Crane Avenue and Clayton Street, struck the guy wire of a utility pole, and crashed into an oak tree. As a result, he was permanently injured.
Crane Avenue is a comparatively short roadway connecting two north-south streets, Highland Street and Clayton Street, which run south from the city limits of Mt. Dora. Immediately west of the dead-end intersection of Crane Avenue with Clayton Street, there is forestation and undergrowth  and a power pole and guy wire placed in location by the City of Mt. Dora to service a city utility. Crane Avenue itself is not within the city limits of Mt. Dora, but is some six feet southerly thereof and located in Orange County (the southern limits of Mt. Dora being the county line of Lake County as well). The pole and guy wire and the Crane-Clayton intersection are all physically located in Orange County.
Other than a stop sign at the Crane-Clayton intersection, there were no other cautionary signs to indicate the presence of the "T" intersection, and there were no street lights in the area of the intersection at the time of the accident. There was testimony that the stop sign was obscured by vegetation and overgrowth not visible until a person was some 15-20 feet from it, and that *809 Ralph Austin was unfamiliar with the intersection. There also was evidence that the stop sign was marked as an Orange County sign. There was no evidence that Orange County maintained either Crane Avenue or the "T" intersection. There was evidence from a Mt. Dora tree surgeon that the city annually trims trees on the south side of Crane Avenue for clearance purposes of the power lines of the city-owned utility. On one occasion some five years prior to the accident, according to testimony from the tree surgeon, the city, at the request of the Lake County School Board, had trimmed foliage from trees on the north side of Crane Avenue because of low-hanging limbs hitting Lake County school buses driven on Crane Avenue.
The appellant first challenges the correctness of the summary judgment insofar as it was based on a finding by the trial court that the City of Mt. Dora could not be held liable for maintaining an intersection outside of its city limits. Appellant argues that the city had assumed this duty of maintenance of the intersection by its prior activities and tree trimming. Appellant relies primarily on three Florida cases in support of this argument: Ide v. City of St. Cloud, 150 Fla. 806, 8 So.2d 924 (1942); City of Tamarac v. Garchar, 398 So.2d 889 (Fla. 4th DCA 1981); Nobles v. City of Jacksonville, 265 So.2d 550 (Fla. 1st DCA 1971), cert. denied, 272 So.2d 158 (Fla. 1973), on appeal after remand, 316 So.2d 565 (Fla. 1st DCA 1975).
The Tamarac and Nobles cases are readily distinguished from the instant situation in that the accidents in each of those cases occurred within municipal city limits. In Ide it was alleged that the municipality of St. Cloud had specific authorization in its charter to maintain parks outside the city limits; that it maintained a bathing beach on a lake outside its corporate limits; and that two persons were drowned in a deep hole in the lake due to the city's negligence. The Florida Supreme Court, in reversing the trial court's dismissal of the complaint, held that the city, acting within its specific authorization, was answerable in tort for any failure of reasonable care in rendering a service to the public.
In the instant case, nothing in the provisions of the Mt. Dora charter gave it authority to maintain roadways and intersections which it had not acquired outside of its corporate limits. If the facts had shown the city had actually exercised control and maintenance of this intersection and the warning signs relating to it, then we necessarily would have to consider the ultra vires argument raised by the appellee. See Town of Palm Beach v. Vlahos, 153 Fla. 781, 15 So.2d 839 (1943); Scott v. City of Tampa, 62 Fla. 275, 55 So. 983 (1911); City of Orlando v. Pragg, 31 Fla. 111, 12 So. 368 (1893). But the facts adduced before the trial court in this case do not support a basis for any finding that the city voluntarily assumed the duty of traffic maintenance of this intersection, thereby inducing Orange County to rely on its undertaking. Cf. Weber v. Towner County 565 F.2d 1001 (8th Cir.1977). On the contrary, the unrebutted evidence in this record is that the intersection is entirely within Orange County, the traffic sign at the intersection was marked as an Orange County sign, and the only maintenance done along Crane Avenue by Mt. Dora has been the trimming of trees for clearance of its power line on the south side of the roadway and, on one occasion five years ago, the trimming of low-hanging branches of trees on the north side for the benefit of the Lake County School Board. The obstruction of the stop sign on the north side of Crane Avenue contended by the plaintiff consists of vegetation other than tree branches extending at school bus level. As pointed out by the Florida Supreme Court in Landers v. Milton, 370 So.2d 368 (Fla. 1979):
A movant for summary judgment has the initial burden of demonstrating the non-existence of any genuine issue of material fact. But once he tenders competent evidence to support his motion, the opposing party must come forward with counterevidence sufficient to reveal a genuine issue. It is not enough for the opposing party merely to assert that an issue does exist.
*810 In this case, the competent evidence supporting the motion referred to above was unrebutted by any counterevidence that would create a factual issue as to placement or ownership of the sign, location of the relevant areas in Orange County, or traffic maintenance and regulation of the intersection and the Crane Avenue approach to it by Mt. Dora. Consequently, the trial judge was not in error in entering a summary judgment in favor of the city in regard to the issue of maintenance for road traffic of the intersection and Crane Avenue.
The second issue posed by the appellant concerns the reliance by the trial court on the case of Romine v. Metropolitan Dade County, 401 So.2d 882 (Fla. 3d DCA 1981), review denied, 412 So.2d 469 (Fla. 1982), wherein it was held that the failure of a county to cut back trees and shrubbery adjacent to an intersection, where the county never undertook or exercised any responsibility for cutting such undergrowth, constituted a planning or discretionary governmental decision, thereby creating immunity under the rationale of Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). Since we are not concerned with the immunity issue as it relates to traffic control of the intersection, for the reasons set forth in our discussion of the first issue on appeal, we will consider governmental immunity only in conjunction with the third issue raised by this appeal: whether the trial court was in error in finding, as a matter of law, that the City of Mt. Dora was not negligent in locating its power pole and guy wire at the end of a "T" intersection.
In regard to this latter finding, the trial court relied on the case of Speigel v. Southern Bell Telephone & Telegraph Co., 341 So.2d 832 (Fla. 3d DCA 1977). In Speigel, the defendants were charged with negligently maintaining a telephone pole too near a roadway, and the pole was struck by plaintiffs' deceased driver. Summary judgment for the defense was affirmed on appeal on the basis "that a utility company is under no obligation to guard against extraordinary exigencies created when a vehicle leaves the travelled portion of a roadway out of control." The appellant does not argue with the rationale of Speigel, which apparently involved a straight roadway, but contends that the instant factual situation is more analogous to, and controlled by, the Florida Supreme Court case of Peninsular Telephone Co. v. Marks, 144 Fla. 652, 198 So. 330 (1940). In Peninsular, there were allegations and evidence that the defendant telephone company had placed its pole approximately 30 inches from the westerly curb line of a north-south street at a point where it began a sharp curve in a south-easterly direction, at a point where the curve and pole were obscured from the view of motorists by a slight incline or hill; the vehicle in which plaintiff was a passenger was travelling south at between 35-45 miles per hour, and skidded off the road at the curve into the pole. The trial court found this sufficient for submission to a jury on the issue of negligence against the company, and the decision was affirmed on appeal by the Florida Supreme Court.
We find the instant facts involving the placement by the defendant city of its power pole and guy wire some two to three feet from the pavement at the end of a deadend intersection much more analogous to the factual situation in Peninsular (a sharp curve) than that in Speigel (a straight road). Indeed, at oral argument, it was conceded that this was so, and that the sustaining of the summary judgment in favor of the city in regard to the issue of its negligence in placement of the guy wire (the evidence was that the plaintiff struck the guy wire, not the pole) must stand on a determination of governmental immunity under the principles set forth in Commercial Carrier. In other words, if the city's placement of the guy wire did not constitute a discretionary "planning" function, as opposed to an "operational" function, then the summary judgment must be reversed on authority of Peninsular.
In determining whether to classify the city's action in placement of the guy wire as a planning function or an operational function, we first apply the preliminary test suggested by the Commercial Carrier opinion, *811 which it adopted from Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965):
Whatever the suitable characterization or label might be, it would appear that any determination of a line of demarcation between truly discretionary and other executive and administrative processes, so far as susceptibility to potential sovereign tort liability be concerned, would necessitate a posing of at least the following four preliminary questions: (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom. If however, one or more of the questions call for or suggest a negative answer, then further inquiry may well become necessary, depending upon the facts and circumstances involved.
In applying the Evangelical questions to the instant factual context, we find, in respect to the decision of selecting a location for a pole and guy wire to support city power lines, that questions (1), (2) and (3) must be answered in the negative. Question (4) merits an affirmative answer, since Mt. Dora's charter apparently authorizes it to erect and maintain its power line beyond its corporate limits. See §§ 7 and 25, Chapter 29-302, Laws of Florida (1953). Clearly, then, under the Evangelical test, further inquiry is indicated. See Harrison v. Lasiter, ___ So.2d ___ (Fla. 1st DCA 1982).
In the instant situation, it reasonably may be argued that the decision by the City of Mt. Dora to have a city utility and to erect lines from its power plant to transmit power along Clayton Street and Crane Avenue constitutes a planning function involving basic policy judgments. But the location of individual poles and guy wires to support those power lines is an implementation of policy, hence an operational function. Griffin v. City of Quincy, 410 So.2d 170 (Fla. 1st DCA 1982). The spacing of poles cannot be said to involve a basic governmental policy or objective. It was not essential to the implementation of the city's objective of distributing electric power that a pole and guy wire be placed directly opposite the dead-end of the "T" intersection of Crane Avenue and Clayton Street.
Accordingly, we affirm the entry of summary judgment insofar as it relates to traffic maintenance of the intersection and the stop sign, but reverse insofar as it relates to placement of the guy wire by the city.
AFFIRMED in part; REVERSED in part; REMANDED for further proceedings consistent with this opinion.
FRANK D. UPCHURCH and COWART, JJ., concur.