REBECCA GRASSL BRADLEY, J.
¶ 52. (dissenting). When this court abrogated the common law doctrine of sweeping governmental immunity in Holytz v. City of Milwaukee, 17 Wis. 2d 26, 115 N.W.2d 618 (1962), it lamented that "[t]he rules surrounding municipal tort immunity have resulted in . . . highly artificial judicial distinctions." Id. at 32. More than a half century later, "artificial judicial distinctions" once again pervade our governmental immunity cases, and the majority overlooks an opportunity to fix this creeping error. Although the legislature grants immunity to certain governmental entities and their agents only "for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions," Wis. Stat. § 893.80(4) (2015-16),[1] the majority opinion leaves in place a judicial distortion of this statutory language that instead ties immunity to a "discretionary" versus "ministerial duty" test invented by the judiciary. The court supplants the legislature's textually limited immunity in favor of an expansive inter *472 pretation of a doctrine long ago abolished but nevertheless repeatedly resurrected by this court's problematic case law. Because the majority opinion perpetuates a non-textual interpretation of § 893.80(4), I respectfully dissent. Further, because a genuine issue of material fact exists as to whether Pro Electric inspected the hole before filling it, I would reverse the court of appeals' decision and remand for further proceedings.
I—I
¶ 53. The Holytz court unsparingly criticized governmental immunity, explaining that the doctrine's "origin seems to be found in the ancient and fallacious notion that the king can do no wrong." 17 Wis. 2d at 33 (internal quotation mark omitted) (quoting Britten v. City of Eau Claire, 260 Wis. 382, 386, 51 N.W.2d 30 (1952)). For decades before Holytz, multiple courts and scholars foreshadowed the Holytz court's critique. Almost a century ago, Justice Wanamaker of the Ohio Supreme Court observed that governmental immunity "has been shot to death on so many different battlefields that it would seem utter folly now to resurrect it." Fowler v. City of Cleveland, 126 N.E. 72, 77 (Ohio 1919) (Wanamaker, J., concurring). More than 70 years ago, the New Mexico Supreme Court exclaimed:
It is almost incredible that in this modern age of comparative sociological enlightenment, and in a republic, the medieval absolutism supposed to be implicit in the maxim, "the King can do no wrong", should exempt the various branches of the government from liability for their torts, and that the entire burden of damage resulting from the wrongful acts of the government should be imposed upon the single individual who suffers the injury, rather than distributed *473 among the entire community constituting the government, where it could be borne without hardship upon any individual, and where it justly belongs.
Barker v. City of Santa Fe, 1943—NMSC-012, ¶ 11, 136 P.2d 480 (internal quotation mark omitted) (quoting Annotation, 75 A.L.R. 1196 (1931)). Later, the Florida Supreme Court determined: "[T]he time has arrived to declare this doctrine [anachronistic] not only to our system of justice but to our traditional concepts of democratic government." Hargrove v. Town of Cocoa Beach, 96 So. 2d 130, 132 (Fla. 1957). Joining other courts in retracting an antiquated common law doctrine, this court unequivocally held, "[HQenceforward, so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity." Holytz, 17 Wis. 2d at 39.
¶ 54. Mindful of its role under Wisconsin's constitutional structure, this court acknowledged that, "[i]f the legislature deems it better public policy, it is, of course, free to reinstate immunity." Id. at 40. This court also explained the scope of its abrogation: "Our decision does not broaden the government's obligation so as to make it responsible for all harms to others; it is only as to those harms which are torts that governmental bodies are to be liable by reason of this decision." Id. at 39-40 (emphasis added). Specifically, this court added that its decision should not "be interpreted as imposing liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-iudicial functions." Id. at 40 (citing Hargrove, 96 So. 2d at 133).
¶ 55. A year later, the legislature responded by enacting an exception to liability echoing the language in Holytz, granting immunity only "for acts done in the *474 exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." Laws of 1963, ch. 198, § 331.43(3). As amended, the current statutory language remains substantially similar:
No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.
Wis. Stat. § 893.80(4) (emphasis added).
¶ 56. Over time, however, this court's decisions in governmental immunity cases have enlarged the limited exception to liability first articulated in Holytz and, importantly, later adopted by the legislature. Recently, the court described the current state of Wisconsin law:
The court has interpreted the words "legislative, quasi-legislative, judicial or quasi-judicial functions" in Wis. Stat. § 893.80(4) to be synonymous with the word "discretionary." If an act is discretionary, then governmental immunity provided by Wis. Stat. § 893.80(4) applies. There is no immunity however, for liability associated with "the performance of ministerial duties imposed by law."
Legue v. City of Racine, 2014 WI 92, ¶ 42, 357 Wis. 2d 250, 849 N.W.2d 837 (footnote omitted) (first citing Lister v. Bd. of Regents, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976); then quoting Brown v. Acuity, 2013 *475 WI 60, ¶ 42, 348 Wis. 2d 603, 833 N.W.2d 96).[2] The majority does not disturb that interpretation, explaining that, although Wis. Stat. § 893.80(4) "is best interpreted 'by applying the legislature's chosen plain language, rather than a judicial distillation thereof,'" the court's "decision is not intended in any way to alter [the 'discretionary'] standard." Majority op., ¶ 19 n.13 (internal quotation mark omitted) (quoting Showers Appraisals, LLC v. Musson Bros., 2013 WI 79, ¶ 35, 350 Wis. 2d 509, 835 N.W.2d 226).
¶ 57. Criticism of this court's interpretation of Wis. Stat. § 893.80(4) is well-documented in recent cases and need not be repeated at length. See, e.g., Legue, 357 Wis. 2d 250, ¶ 43 ("The court's explication and application of the doctrine of governmental immunity under Wis. Stat. § 893.80(4) has come under increasing criticism by members of the court."); Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶ 103, 350 Wis. 2d 554, 835 N.W.2d 160 (Gableman, J., concurring) ("[T]his court continues to apply a series of doctrines that have no connection to the text of the municipal immunity statute ... or our decision to abrogate all governmental immunity in Holytz . . . ."); Umansky v. ABC Ins. Co., 2009 WI 82, ¶ 78, 319 Wis. 2d 622, 769 N.W.2d 1 (Prosser, J., concurring) ("So far as government responsibility for torts is concerned, immunity has become the rule and liability has become *476 the rare exception. Justice has been confined to a crawl space too narrow for most tort victims to fit."); Scott v. Savers Prop. & Cas. Ins. Co., 2003 WI 60, ¶ 79, 262 Wis. 2d 127, 663 N.W.2d 715 (Prosser, J., dissenting) ("In effect, this methodology has made the rule become immunity—the exception, liability.").
¶ 58. Justice Gableman's concurrence in Bostco LLC v. Milwaukee Metropolitan Sewerage District, 2013 WI 78, 350 Wis. 2d 554, 835 N.W.2d 160, stands out among the critiques because it offers an alternative interpretation of Wis. Stat. § 893.80(4) . The Bostco concurrence advocates "adopting] the 'planning-operational distinction' to determine whether governmental action is 'legislative, quasi-legislative, judicial, or quasi-judicial.' " 350 Wis. 2d 554, ¶ 103. That approach "grants immunity only to upper-level legislative, judicial, executive and administrative policy and planning decisions rather than to any decision that might be made." Id. (emphasis added) (quoting 18 Eugene McQuillin, The Law of Municipal Corporations § 53:16, at 236 (3d ed. 2013) [hereinafter McQuillin]). Compared to the prevailing interpretation of Wis. Stat. § 893.80(4) as granting immunity to "discretionary" acts, the planning-operational distinction comes closer to narrowing the field of what this court deems "legislative, quasi-legislative, judicial or quasi-judicial functions."[3] Using the planning-operational distinction as a definition of the statutory phrase, however, suffers from the same shortcoming that afflicts the court's *477 current approach: it replaces the legislature's chosen language with a judicially manufactured standard.
¶ 59. Rather than layering the court's favored standard over the statutory text—or simply asserting that a particular action is "legislative or quasi-legislative," as the majority does here—the appropriate interpretive tool is to critically assess the original meaning of "legislative, quasi-legislative, judicial or quasi-judicial functions."[4] The specific language chosen by the legislature in Wis. Stat. § 893.80(4) parallels the exception to liability crafted by this court's Holytz opinion, which cited Hargrove v. Town of Cocoa Beach, 96 So. 2d 130 (Fla. 1957), when introducing into Wisconsin law an exception for acts pursuant to "legislative or judicial or quasi-legislative or quasi judicial functions." Holytz, 17 Wis. 2d at 40. In Hargrove, the Florida Supreme Court also stopped short of absolutely abrogating common law immunity:
We think it advisable to protect our conclusion against any interpretation that would impose liability on the municipality in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial, functions as illustrated in such cases as Elrod v. City of Daytona Beach, 180 So. 378; and Akin v. City of Miami, Fla.1953, 65 So.2d 54.
Hargrove, 96 So. 2d at 133 (citations omitted).
¶ 60. Careful review of the two cases cited in Hargrove clarifies that the Florida Supreme Court sought to preserve immunity for a narrowly tailored set of governmental functions bearing a particular legislative or judicial character. In Elrod v. City of *478 Daytona Beach, 180 So. 378 (Fla. 1938), the Florida Supreme Court upheld a city's immunity in a suit by a traveling salesman who sought damages resulting from his arrest for violating an allegedly unconstitutional ordinance. Id. at 378-79. The court explained that "the action of the city in adopting the ordinance in question was ... a legislative act.... For errors of judgment in the exercise of such powers the cities are not liable .. .." Id. at 379 (quoting Trescott v. City of Waterloo, 26 F. 592, 594 (C.C.N.D. Iowa 1885), which cited Fowle v. Common Council of Alexandria, 28 U.S. (3 Pet.) 398 (1830)).
¶ 61. Likewise, in Akin v. City of Miami, 65 So. 2d 54 (Fla. 1953), the Florida Supreme Court upheld a city's immunity in a suit seeking damages resulting from its denial of a building permit, explaining that, "inasmuch as the granting or withholding of a building permit by a municipality was the exercise of a purely governmental function, the city could not be held liable in a tort action for damages for the wrongful refusal to issue such a permit." Id. at 55. Immunity for enactment of an ordinance, as in Elrod, implicates actions with uniquely legislative character, while immunity for a decision to deny a permit after applying law to facts, as in Akin, implicates action of a more judicial nature.
¶ 62. The legislative and judicial actions immunized in Elrod and Akin align well with the ordinary meaning of the words found in Wis. Stat. § 893.80(4) . A "function" refers to an "[ajctivity that is appropriate to a particular business or profession." Function, Black's Law Dictionary 787 (10th ed. 2014) [hereinafter Black's]; see also The American Heritage Dictionary of the English Language 710 (5th ed. 2011) [hereinafter American Heritage] (defining "function" as "[t]he action or purpose for which a person or thing is suited or employed"). "Legislative" means "[o]f, relating to, or *479 involving lawmaking or the power to enact laws; concerned with making laws." Legislative, Black's, supra, at 1039. "Judicial," in turn, means "[o]f, relating to, or involving a judgment." Judicial, id. at 974. The prefix "quasi" means "[s]eemingly but not actually; in some sense or degree; resembling; nearly." Quasi, id. at 1439.[5]
f 63. Taken together, these definitions suggest that the phrase "legislative, quasi-legislative, judicial or quasi-judicial functions" grants immunity to the entities listed in Wis. Stat. § 893.80(4) only for actions pertaining to making or enacting laws, actions involving an exercise of judgment in an adjudicative sense, or actions otherwise resembling lawmaking or adjudication. Essentially, the statutory text contemplates immunity for the enumerated entities and their agents within the limited sphere of authority by which government makes and adjudicates law. Toward that end, this court properly recognizes that "[t]he purpose of [governmental] immunity is to ensure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government, if such a policy decision, consciously balancing risks and advantages, took place." Legue, 357 Wis. 2d 250, ¶ 40 (second alteration in original) (quoting Scarpaci v. Milwaukee Cty., 96 Wis. 2d 663, 687, 292 N.W.2d 816 (1980)).[6] Returning to an interpretation tethered to the *480 text of Wis. Stat. § 893.80(4) would safeguard the separation of powers among the branches of government without shifting to innocent victims the burden of losses caused by government actors and agents.
¶ 64. The planning-operational distinction, suggested by Justice Gableman in Bostco, seeks to restore some limitations on immunity, inching closer to the actual text Wis. Stat. § 893.80(4): "[A] decision to adopt (or not adopt) a certain policy would be shielded by immunity, but the implementation of the policy would be subject to traditional tort standards." Bostco, 350 Wis. 2d 554, ¶ 112 (Gableman, J., concurring). Although the discretionary-ministerial distinction purportedly arose out of similar "concerns over courts interfering with other branches of government," 18 McQuillin, supra, § 53:4, at 168-69, it inevitably regressed from protecting political decisions to immunizing the destruction of private property. Because both tests substitute, by judicial fiat, a grossly circumscribed limit on government immunity undetectable in the language actually chosen by the legislature, neither is compatible with the comparatively narrow governmental immunity actually found in the text of Wis. Stat. § 893.80(4)[7]
*481 ¶ 65. Restoring an interpretation of Wis. Stat. § 893.80(4) properly grounded in that section's text would bring coherence and predictability to our governmental immunity jurisprudence. If a municipality acts in a formal capacity pursuant to its powers derived from the State, it might reasonably be immune from liability caused by, for example, an ordinance declared unconstitutional or a decision to deny a permit. Critically, immunity would no longer attach to negligent actions by a government actor (or agent) disconnected from the government's truly legislative, quasi-legislative, judicial, or quasi-judicial functions. Characterizing the installation of a traffic light pole as a legislative or quasi-legislative act is the latest absurdity generated by the misapplication of the governmental immunity doctrine.[8] See Scott, 262 Wis. 2d 127,

 All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

 For in-depth discussion of the governmental immunity doctrine's evolution since Holytz, see generally Legue v. City of Racine, 2014 WI 92, ¶¶ 35-43, 357 Wis. 2d 250, 849 N.W.2d 837; Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, 350 Wis. 2d 554, 835 N.W.2d 160 (Gableman, J., concurring); Umansky v. ABC Ins. Co., 2009 WI 82, 319 Wis. 2d 622, 769 N.W.2d 1 (Prosser, J., concurring); Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶¶ 60-99, 235 Wis. 2d 409, 611 N.W.2d 693 (Prosser, J., dissenting).

 For further discussion of the planning-operational distinction in the context of Wisconsin law, see also Nicholas J. Bullard, Comment, Pushing the Reset Button on Wisconsin's Governmental Immunity Doctrine, 2014 Wis. L. Rev. 801, 824-28.

 State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶¶ 44-52, 271 Wis. 2d 633, 681 N.W.2d 110, outlines the principles of statutory interpretation.

 See also Quasi-legislative, Black's Law Dictionary 1440 (10th ed. 2014) ("(Of an act, function, etc.) not purely legislative in nature ..:."); Quasi-judicial, id. ("Of, relating to, or involving an executive or administrative official's adjudicative acts.").

 One commentator similarly described immunity's purpose: "[P]ublic policy justifies applying immunity where the challenged government action is of a policymaking character *480 —involving social, economic, or political judgments—and where the government action is best monitored through the political process rather than through tort actions." Linda M. Annoye, Comment, Revising Wisconsin's Government Immunity Doctrine, 88 Marq. L. Rev. 971, 981 (2005).

 The "guided balancing test" proposed by Andrea Dud-ding, Comment, Reining in Municipalities: How to Tame the Municipal Immunity Monster in Wisconsin, 2004 Wis. L. Rev. 1741, would similarly depart inappropriately from the text of Wis. Stat. § 893.80(4) . Engineering a balancing test risks replacing predictable rules of law with the will or whim of the court:
*481 [Alt the point where an appellate judge says that the remaining issue must be decided on the basis of the totality of the circumstances, or by a balancing of all the factors involved, he begins to resemble a finder of fact more than a determiner of law. To reach such a stage is, in a way, a regrettable concession of defeat—-an acknowledgment that we have passed the point where "law," properly speaking, has any further application. ... [E]quality of treatment is difficult to demonstrate and, in a multi-tiered judicial system, impossible to achieve; predictability is destroyed; judicial arbitrariness is facilitated....
Antonin Scalia, Essay, The Rule of Law as a Law of Rules, 56 U. Chi. L. Rev. 1175, 1175-82 (1989).

 Because it conflates legislative and quasi-legislative decision-making with execution of a construction project plan, the majority mistakenly concludes that Pro Electric can be immune from liability for severing the sewer lateral. Majority op., ¶¶ 28-30. The majority reaches this conclusion based on Allstate Insurance Co. v. Metropolitan Sewerage Commission of Milwaukee County, 80 Wis. 2d 10, 258 N.W.2d 148 (1977), which concluded that the Commission was immune from liability for placement of a manhole: "Where, when and how *482 to build sewer systems are legislative determinations imposed upon a governmental body. It is not for the court to be judge or jury to 'second guess' them in these determinations nor to find they are liable for negligence." Id. at 15-16 (footnote omitted). The Allstate court's immunity analysis properly asked whether governmental conduct was legislative or quasi-legislative in nature. At the time, the court still seemed to recognize the distinction between immunity for policy determinations pursuant to lawmaking authority and liability for implementation of those decisions. Compare Dusek v. Pierce Cty., 42 Wis. 2d 498, 506, 167 N.W.2d 246 (1969) ("[W]hether or not to place a stop sign, a warning sign, or a yield sign at the approach to a county trunk highway is a legislative decision that must be undertaken by the county board and not by the courts."), with Chart v. Dvorak, 57 Wis. 2d 92, 100-01, 203 N.W.2d 673 (1973) ("[0]nce appellants made the legislative or quasi-legislative decision to place the highway warning sign, they had a duty to place it and maintain it without negligence." (emphasis added)).
Even if immunity's tendrils reached all the way to DOT's planning decisions here, immunity would not extend to negligent implementation of DOT's plan. The majority grants Pro Electric immunity because the majority concludes there is no evidence Pro Electric deviated from DOT's plan. See majority op., ¶ 30. A lack of proof of negligence may absolve Pro Electric of liability, but whether Pro Electric acted negligently presents a different question than whether Pro Electric was immune from liability. Here, the manner in which Pro Electric augured the hole and severed the sewer lateral bears no resemblance to lawmaking or adjudication; consequently, Pro Electric cannot be immune from liability for any negligence in performing these services.